Pearson, C. J.
-The pleadings present the question, whether land purchased by a firm with partnership funds, *53 for partnership purposes, and used as a part of the stock in carrying on the business, a tannery for instance, in the. absence of any agreement in the articles of copartnership, shall on the dissolution of the firm by the deatn of one of 'Ihe parties, descend as real estate to the heir at. law, or pass as personal estate to the executor or administrator of the deceased partner. ^ •
For the purpose of dceiding the general principle, we will put out of the case the special circumstance/that testate W. A. Fatton, was the owner of the land, and after the formation of the firm, conveyed three-fourths of the lot to the other three members of the firm in fee simple, r.e-taining the other fourth, and that the articles of copartnership provide, that at its dissolution, all the debts shall be first paid out of the joint funds, the capital advanced be returned to each partner and “ the balance of the partnership assets shall then be equally divided between the four copart-ners.”
It is the settled doctrine of equity iu the English Courts, that as between the partners, and for the purposes of the firm, real estate belonging to the partnership,-will be treated as personalty, if the partners have by the articles of copartnership or otherwise impressed upon it the character of personalty.
But it is a vexed question, whether after the dissolution of the firm by tbo death of one of the members, the debts being all settled and. no purpose of the firm requiring it, the share of the deceased partner in the laud, shall-still retain its character of personal property and pass to his per-sonal representatives, or shall descend as real estate-to his heir at law.
Upon this póint Mr. Justice Story in his work on partnership, sec. 93, remarks “ there has been a great diversity -of juridical opinion, as well as of judicial decision, and the *54 doctrine may be considered 'as open to many distressing doubts.
The idea that land shall be considered and treated as personal property, is not readily comprehended' by a plain mind and requires explanation. It is an artificial and re*' fined doctrine,- adopted by the chancellors in England in. reference to copartnerships, on the pirinciple 0f giving effect to the agreement of the copartners ; and originated in this wise: By the common law, on feudal reasons, land cordd not be sold for the payment of debts. By virtue of legis&fcive enactments, the writ of elegit, and statutes mer•chants and staple subjected land to the claims of creditors in a modified way, that is by giving the creditor a right to have the land extended -at a yearly value and to have an estate antbreceive thó1 rents and profits-until, at the extended value, the debt was satisfied. This however did not cause land to answer the purposes of trade, and become the means of extended credit as fully as if it could he sold out and out like personal property. Again, land held in joint tenancy was subject to the doctrine of survivorship, by which on the death of either-tenant, the whole estáte belonged absolutely to the surviving tenant. -This was a great drawback to tlie formation of copartnerships iu.which the business made it necessary for tlie firm to own land. To obviate These difficulties, the articles of .copartnership in many instances contained an agreement, that the land required and owned as part of the stock in trade, should be considered and treated as.personalty : and in others the acts of the parties-furnished ground for the inference that it was the intention to impress on land the character of personalty, in all such cases ; and the courts inclined to extend them by construction and implication. It was held in equity that the agreement and intention of the parties *55 should be carried into effect, a id to do so, the land must be considered and treated as personalty, 'f his was all well enough and p’ain sailing, as between the copartuei’3, and for the purposes of the firm, but whe'u it was attempted t.o carry the principle farther, and make it apply to land after a dissolution by the death of one of the parties, and after the business was closed, so as to disinherit the heir atlavfy. and allow the personal representative to .take the land anj| dispose of it as personal property; the doctrine became much more refined, and too attenuated for practical .purposes, and calls for the remark of Mr. Justice Story, “that the doctrine may be considered open to many distressing doubts.” "
In this Slate.laj^d can be sold out and out,' under execution, and the doctrine of the common Jaw survivorship is abolished. So, the two rules of law, which gave rise to this doctrine, and were the foundation on which it was built, have been taken-away ; and we are-inclined to the opinion, under the rule “cessantc ratioue, cessat lex,” the doctrine is not applicable to the relation of copartners, even between the parties themselves : and we are clearly of opinion that it does not apply as between the heir at law and the personal representative. t And in the absence-of any adjudication by which it is fixed in our law, we regard it as another of those refined doctrine's of equity jurisprudence, which render the English system so extremely artificial and complicated ; and.add it to tae list of • “ pin money” “ part performance,” “the lien of a vendor for. the purchase money,” “the duty* of the purchaser to see to the application of the purchase-money,” and the wife’s equity for a settlement. McKimmon vs. McDonald, 4 Jones.’ Eq. 1.
*56 There will be a decree declaring- that the plaintiff is not ■entitled to that part of the fund in the hands of the defen•dant’s arising from the sale of the tan yard lot.
The cost to be paid by the plaintiff.